

**SIGNED this 03rd day of November, 2010.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-12571-CAG |
| | § | |
| DENA A. LANGE, | § | CHAPTER 7 |
|     Debtor. | § | |

| | | |
|---|---|---|
| CHRISTIAN R. LANGE, | § | |
|     Plaintiff, | § | |
| | § | ADV. NO. 09-01179- CAG |
| v. | § | |
| | § | |
| DENA A. LANGE a/k/a | § | |
| DENA ANNE LANGE, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION DENYING PLAINTIFF'S COMPLAINT TO DETERMINE
DISCHARGEABILITY [OF DEBT] AND FOR DECLARATORY JUDGMENT**

Came on to be considered on October 14, 2010, the trial on the merits of Plaintiff's

Complaint to Determine Dischargeability and for Declaratory Judgment (the "Complaint"). For

the reasons stated below, the Court finds that Plaintiff's Complaint should be denied and a take

nothing judgment be granted to the Defendant.

## BACKGROUND

Plaintiff and Debtor/Defendant were formerly husband and wife. Their marriage was terminated by divorce and a Final Decree of Divorce was entered on January 23, 2009. (Plaintiff Ex. 1.) The Divorce Decree provided for both a division of assets and liabilities. Further, the Divorce Decree provides that the Debtor is required to indemnify and hold harmless her husband from her failure to pay specific debts. At issue in this adversary proceeding is the note on the Volvo XC70 payable to Wells Fargo and a credit card debt payable to Capital One.

Defendant filed Chapter 7 bankruptcy on September 11, 2009. The Debtor's Schedules do not list the Volvo on Debtor's Schedule "B" – personal property – or Debtor's Schedule "C" – property claimed as exempt. There are three debts listed on Debtor's Schedule "F" – unsecured nonpriority claims payable to Capital One (all three are listed as business debts):

Capital One Bank
P.O. Box 30281
Salt Lake City, UT  84130
Acct. No. xxx-0278
As of 10/2007 – business - $770

Capital One Bank
P.O. Box 30281
Salt Lake City, UT  84130
Acct. No. xxx-3071
As of 12/2007 to 8/2008 – business - $7,394

Capital One Bank
P.O. Box 65007
Dallas, TX  75265-0007
Acct. No. xxx-6882
No Date – business - $166.20

The Debtor's Schedule "F" does list the debt for Wells Fargo in the amount of $21,585 for the 2007 Volvo XC70. The Debtor's Schedule "H" – co-debtors – does state that all debts

listed on Schedule "F" as business debt are Plaintiff's as co-debtor. As such, the Capital One debts on Schedule "F" are also those of Plaintiff.

Plaintiff filed his Complaint to Determine Dischargeability and for Declaratory Judgment, Adversary No. 09-01179-cag, on December 10, 2009. The Complaint, *inter alia*, states that as a consequence of Debtor's default on the Wells Fargo account, Plaintiff was required to pay Wells Fargo the "amount of the default, interest, repossession expenses, attorney's fees, penalties, and out-of-pocket expenses resulting in actual damages in excess of $15,000." (Cmplt. at ¶ 9.) Further, the Plaintiff alleges that:

> Debtor has additionally scheduled a debt owing to Debtor by Plaintiff in the sum of $7,800, which debt Debtor claims as exempt property. Plaintiff is entitled to an offset against such debt by way of indemnification for the amount of the damages incurred by Plaintiff as a consequence of the default by Debtor on the Wells Fargo Bank auto lease account.

Complt. at ¶ 10.

The Plaintiff seeks indemnification for debts, including the Capital One debt, that Defendant was ordered to pay but for which Plaintiff is co-debtor. Further, Plaintiff seeks an offset against the Wells Fargo debt and reasonable attorneys' fees.

## FACT ADDUCED AT TRIAL

A trial on the merits was heard on October 14, 2010. Both Plaintiff and Defendant testified. Exhibits were stipulated to, including affidavits of the Plaintiff and Defendant, which were also offered in support and opposition to Plaintiff's Motion for Summary Judgment that the Court previously denied.

The testimony provided by the parties focused on the Wells Fargo debt and Capital One unsecured debt. As an initial matter, the Court notes that although the Divorce Decree (P-1) does reference Defendant's obligation to Capital One in the amount of $6,192, the account number is not listed. (P-1, p. 54.) Plaintiff was required to pay and indemnify Defendant, one-half of the

3

Capital One debt, account no. x2306, in the amount of $25,087.15.  (P-1, pp. 50-51.)  The Plaintiff's Capital One account is not listed in Debtor's Schedules.

Defendant testified that the Capital One account for which Plaintiff seeks indemnification does not appear to be any of the Capital One accounts listed in her Schedules.  Further, she is unclear as to which Capital One account in the Divorce Decree obligates her to pay because there is no account number listed, and the amount owed is different from the amounts listed in her Schedules.

Defendant also testified that the Volvo was repossessed at her work in July 2009.  She acknowledged that she was delinquent on the lease payments.  She was adamant that when the car was repossessed that it was in excellent condition with no noticeable marks and scratches, and that the vehicle was not in any way damaged, as Plaintiff contended, at the time of repossession.  Further, Defendant produced a Notice of Toll Violation on July 14, 2010, just days after the car was repossessed.  (D-6.)  The original provided to the Court shows the front end of the vehicle, devoid of any damage whatsoever.  Defendant also testified that in May 2010, she had roughly $5,000 in repairs made to the exterior of the car for hail damage.  Defendant maintained that after the repairs were completed, she would not have taken the car back had it not been in perfect condition.

Plaintiff testified as well regarding the Volvo obligation and Capital One account.  Plaintiff testified that he received threatening phone calls from Capital One or a debt collector regarding payment of an account that Plaintiff believes he may be "secondarily" liable.  Plaintiff also speculated that the account may have been opened after the parties were divorced.  Moreover, Plaintiff acknowledged that no suit had been filed regarding any Capital One account.

As to the Wells Fargo debt, Plaintiff stated that he was the co-signer on the lease.  (P-2.) Further, after the car was repossessed in July 2009, Plaintiff faxed a letter to Wells Fargo (D-3), instructing Wells Fargo not to release the car to Defendant but rather to release the Volvo to a friend for transport to Washington where Plaintiff now resides.  Plaintiff testified that in order to obtain possession of the vehicle he had to pay four months of delinquent lease payments ($512.77/month plus other associated costs in the total amount of $2,645), plus provide proof of insurance.  (D-5.)  The cost of the insurance Plaintiff paid was represented to be $247.89. Plaintiff additionally represented an expense of $77 to get the car out of storage.

Plaintiff also testified that at the time of repossession and subsequent transport to Washington, the car had been severely damaged in the following manner:

> front door inoperable, left door damage, scratches over the car, gouge to the front bumper, mirrors also damaged

Plaintiff states that to repair all the damages to the car cost $4,585.  Further, the Plaintiff stated that he made two more lease payments on the car for August and September totaling $1,075.  In addition, when he traded in the vehicle in September 2009 for a vehicle with a cheaper, less expensive monthly payment, he paid a negative trade-in balance of $4,063, plus a carrier fee of $1,758.[1]

Plaintiff was cross-examined regarding his affidavit that had previously been filed in support of his Motion for Summary Judgment.  (D-2.)  The affidavit contains a list of expenses that Plaintiff states he paid once he obtained the vehicle after repossession.  A number of the items listed in the affidavit are not substantiated by testimony or documentary proof.  Plaintiff stated in his affidavit that he paid Wells Fargo Finance in the amount of $23,263.89 on July 13,

---

[1] Plaintiff did not explain, nor was he asked, how he could "trade in" a leased vehicle.  Moreover, Plaintiff did not fully explain what the negative balance of $4,063 actually represents, other than possibly the remaining balance owed under the lease.

2009, but that number cannot be correct given the vehicle was being leased and the car was traded in in September 2009, and he had to pay off the lease upon trade-in.[2]

Second, the Plaintiff asserts that he paid $1,758 on July 28, 2009, to transport the car to Washington. The Plaintiff further avers that he paid delinquent payments of $4,268 to Wells Fargo Bank on August 7, 2009, which in no way corresponds to any of the testimony of either party. Plaintiff also seeks indemnification for repairs of $4,585.41, yet he provides no documentation or pictures demonstrating damage to the car at the time of possession or receipt, or a bill of the repairs effectuated.[3] The Court accepts Plaintiff's testimony that he made lease payments for August and September 2009 in the amounts of $512.77 and $563.02 respectively. (*See* correspondence contained in P-2 regarding Plaintiff's obligation to make the payments.) Also, the Court finds credible Plaintiff's assertion that the repossession cost of $2,645.89 had to be paid to Wells Fargo to reacquire the vehicle, and that initial cost of insuring the vehicle was $247.89.

### LEGAL ANALYSIS

BAPCPA significantly modified certain subsections of § 523(a)(15). The revised subsection applies to cases filed after October 17, 2005. Because the Defendant's chapter 7 case was filed on September 11, 2009, there is no question that the post-BAPCPA version of § 523(a)(15) determines the parties' dispute.

Revised § 523(a)(15) provides that:

[a] discharge under section 727, . . . of this title does not discharge an individual debtor from any debt – to a spouse, former spouse or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with the separation agreement, divorce decree or other order of the court of

---

[2] The lease's duration was 48 months, with the initial payment being made in September 2006. Hence, at the time of trade-in there were roughly 12 months of payments left to be made (12 months x $517.77 = $6,153.44). Moreover, the total amount of payments to be made under the lease was $24,612.96. (P-2.)
[3] Plaintiff testified that he was not present when he obtained the car or when it was shipped to him in Washington.

6

record, or a determination made in accordance with State or territorial law by a government unit. . . .

11 U.S.C. § 523(a)(15).

Subsection 523(a)(15), as it existed prior to BAPCPA, required a court to consider two exceptions which, if applicable, could allow the debt at issue to be dischargeable, such as whether the defendant debtor could pay the debt and whether, by looking at certain factors, it was equitable to find the debt dischargeable. After the modification made by BAPCPA, the ability to discharge debts falling within the scope of § 523(a)(15) is significantly limited, with the balancing of the hardships-type exceptions eliminated. Now,

> [T]o be excepted from discharge under this provision, the debt must: (1) be to a spouse, former spouse, or child of the debtor; (2) not be the type described in section 523(a)(5), i.e., not a domestic support obligation; and (3) have been incurred in the course of divorce or separation in connection with a separation agreement, divorce decree, or other order of a court.

*In re Schweitzer*, 370 B.R. 145, 150 (S.D. Ohio 2007).

In *Schweitzer*, the divorcing parties negotiated a "hold harmless" agreement in which each would indemnify the other for certain debts. The *Schweitzer* court noted that the hold harmless provision created a new debt between the divorcing parties. *Id.* Additionally, a hold harmless agreement for a credit card obligation was not a "domestic support obligation" that would be excepted from discharge under § 523(a)(5), but fell directly within the exception to discharge of § 523(a)(15). *Id.* at 152. As another court has noted, the practical effect of how obligations arising out of a marital relationship are classified in an individual's chapter 7 and 11 cases, and in cases under chapter 12, no longer exists in a § 523(a) context: such debts are not discharged, whether they are domestic support obligations or are other types of obligations arising out of a marriage dissolution, such as property settlement obligations. *In re Tracy*, 2007 WL 420252, at *2 (Bankr. D. Idaho Feb. 2, 2007) (citing 4 COLLIER ON BANKRUPTCY ¶ 523-118-

523-119 (2006)); *In re Douglas*, 369 B.R. 462, 464-65 (Bankr. E.D. Ark. 2007) (making a similar decision and citing *Tracy* and this same section of COLLIER).

In this matter, the focus of the litigation was payment of the Wells Fargo and Capital One debts. There was no argument regarding the other debts that Defendant listed in her Schedules and indicated in Schedule "H" that Plaintiff is a co-debtor on those debts. Further, the Debtor/Defendant did admit in her Response (answer) to Plaintiff's Complaint that to the extent a money judgment is taken against Plaintiff for debts, Defendant agreed to indemnify Plaintiff in their Divorce Decree. Those debts are:

1. Debt owed to American Express
   Account number xxxx____
   Balance $7,146.00

2. Debt owed to GEMB PPlus
   Account number xxxx9419
   Balance +/-$2,000

3. Debt owed to Kohl's
   Account number xxxx8352
   Balance +/-$250

4. Debt owed to USAA Credit Card
   Account number xxxx2020
   Balance +/-$2,000

5. Debt owed to Monitronics
   Account number xxx2197
   Balance +/-$250

6. Debt owed to Loan from Sonja and Valdo Villalba
   Balance $9,600

7. Debt owed to Drive Financial
   Account number xxx1000
   Balance $9,600

8. Debt owed to Discover Credit Card
   Account number xxxx7135
   Balance $13,828.41

8

9.    All debts incurred in Dena Lange's sole name since August 1, 2007

10.   Federal Tax Liability 2007 for the previous year:
      100% of tax liability resulting from Dena Lange's employment

11.   Federal Tax Liability 2008 for the current year:  2008
      100% of tax liability resulting from Dena Lange's employment

As to the Capital One debt, the Court finds that Plaintiff has failed to meet his burden.

*See* **In re Cooper**, 2010 WL 1992372, *3 (Bankr. E.D. Tenn., May 18, 2010) (holding that a

creditor has the burden to show by a preponderance of the evidence that the debt is

nondischargeable under 523(a)(15)).  Although 11 U.S.C. § 523(a)(15) generally provides that

the party who has agreed to indemnify an ex-spouse in a divorce decree may not escape liability

through bankruptcy and a subsequent discharge if the ex-spouse pays the debt, the party must

show the existence of a debt subject to indemnification.  In this case, Defendant testified that

there were three business debts to Capital One in her Schedule "F," but none of the business

debts correlate to the Divorce Decree by account number (none is listed in the Divorce Decree)

or amount.  Further, Plaintiff surmised that the account may have been opened after the divorce

and he could not recall signing any credit card agreement.  Plaintiff produced no documentary

evidence – correspondence, demand letters – to demonstrate what debt was being collected.  As

such, Plaintiff has not met his burden.

The Court further finds that Plaintiff has not met his burden as to the Wells Fargo debt.

To begin with, Plaintiff's testimony and his affidavit are inconclusive at best and not credible.

The Defendant correctly pointed out a number of inconsistencies in Plaintiff's affidavit that

contradict Plaintiff's request for reimbursement.  For example, Plaintiff alleges that he paid

"Delinquent Payments" to the bank and "incurred [expenses] in curing" the default, suggesting

that he merely cured the delinquent lease payments and associated charges, but then Plaintiff also

alleges that he paid "all principal, interest, penalties and expenses" owed to Wells Fargo.  While Plaintiff alleges that he "paid all the banks [*sic*] demands and acquired title to the automobile" on July 13, 2009, Plaintiff also claims he made monthly payments on the lease in August and September 2009, when according to his Affidavit, the lease had already been paid off.  Plaintiff attests that he made payments related to the lease to three or four apparently different entities – Wells Fargo Finance (Payoff), Wells Fargo Bank Leasing Corporation (Delinquent Payments), Wells Fargo Bank Leasing (Mo. Pmt.), and Wells Fargo Auto Finance (Mo. Pmt.)  – without any explanation.

Further, as noted herein, the Court found parts of the Plaintiff's oral testimony contradictory to Plaintiff's affidavit, notably regarding lease obligation payments, and whether there was any damage to the vehicle prior to repossession.

In addition to the lack of credible evidence, the Court finds that there is no basis for Defendant to indemnify Plaintiff.  While the Divorce Decree did award the 2007 Volvo XC70 to Defendant and provided that she indemnify Plaintiff if he was required to pay the debt, that is not what happened here.

First, Plaintiff alleges in his Affidavit that he paid off the bank and acquired title to the Volvo.  Thus, rather than paying off any debt of the Defendant, Plaintiff merely paid to obtain the benefit of the bargain of the lease – ownership and use of the Volvo.  The expenses he claims as additional damages are, therefore, his own expenses as the owner of the vehicle – the expenses of insuring the vehicle, of transporting it to the location of his choice, and of repairing it when it was damaged in that transportation.  None of those expenses were a consequence of the Defendant's default.

Second, if Plaintiff's allegations in his Affidavit that he paid the delinquent payments and made two subsequent monthly payments under the Lease are true, and he cured and assumed the lease, the expenses he claims as "damages" (lease payments, insurance, shipping, repair) are still just his own expenses as the lessee of the vehicle.  Again, none of those expenses was a consequence of Defendant's default.  Plaintiff voluntarily assumed the lease by curing the delinquency.  Had he not re-acquired the vehicle and then been required to cure the delinquency, he would have had recourse and a right to reimbursement from Defendant.  Further, by Plaintiff's own testimony, not only did he retain the use of the vehicle for the months of July-September 2009 (which obligated Plaintiff to pay the lease and insure the car), but he also traded the car in for another car.  As such, he received the benefit of getting credit for trading the car in against any debt owed.  The fact that a "negative balance" was due as a result of the trade-in is a debt owed by Plaintiff.[4]

Finally, the Court will address one last argument of the Plaintiff.  The parties stipulated that the Divorce Decree was modified to grant Defendant a money judgment of $7,893.16.  The money judgment was entered for Plaintiff's failure to pay Defendant one-half (½) of a 401(k) retirement account.  The Plaintiff was requesting a setoff for the money judgment against what the Plaintiff sought against Defendant for indemnification of payment for the Volvo XC70.  Because the Court finds no basis for Defendant indemnifying Plaintiff, the Court will not address this argument.

## CONCLUSION

The Court finds that those debts listed in Debtor's Schedule "F" to which she listed Plaintiff as a co-debtor on Schedule "H" and were also listed in the Divorce Decree, are all non-

---

[4] Curiously, there is not one document evidencing the "trade in" transaction and the amounts due and paid before the Court.

dischargeable only to the extent that the creditor/claimant obtains payment and/or a money judgment against Plaintiff.  Plaintiff would then under 11 U.S.C. § 523(a)(15) have a right of indemnification against Defendant that would not be discharged by Defendant's Chapter 7 discharge.  Defendant's liability for the Capital One debt not listed in her Schedules and for any debt relating to the Wells Fargo Bank lease on the Volvo XC70 are not subject to a right of indemnification under Section 523(a)(15) and are completely discharged.  The Court further finds that the parties are to bear their own costs.

    SO ORDERED.

                                                                    # # #